UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRYSTAL QUINTO, *individually and on behalf of all other persons similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>Defendant. | Case No. 3:22-cv-04429-JD<br><br>**ORDER RE REMAND** |

Plaintiff Krystal Quinto sued defendant The Regents of the University of California ("UC") on behalf of herself and a putative class of California residents, alleging that her "personally identifiable information and protected health information" was unlawfully disclosed in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, and her privacy rights under the California Constitution. Dkt. No. 1, Ex. A (Complaint) ¶¶ 11, 69-97. The complaint was originally filed in Alameda County Superior Court. UC timely removed the action to this Court under the federal officer removal statute. Dkt. No. 1 (Notice of Removal [NOR]).

Quinto says that UC was not acting under the direction of a federal officer in connection with the challenged actions, and asks that this case be remanded to state court. Dkt. No. 12. UC argues in favor of remaining here. Dkt. No. 18. The case was removed improvidently and without jurisdiction, and is remanded to the Superior Court. 28 U.S.C. § 1447(c).

**BACKGROUND**

UC owns and operates UCLA Health, through which it "offers a full range of medical services, including primary and outpatient care, and treats thousands of patients each year." Complaint ¶ 6. Quinto is a patient of UCLA Health and uses its website, www.uclahealth.org, "to book medical appointments and access the UCLA patient portal." *Id.* ¶ 8. She alleges that when

she clicks on links and conducts searches on the website, the internet communications that facilitate those actions are secretly disclosed to Facebook, "alongside additional information that transcribes the communication's content" -- that is, Quinto's private medical information -- "and the individual's identity." *Id.* ¶ 29. Quinto says that these disclosures occur because the website embeds a piece of code called the "Facebook Tracking Pixel." *Id.* ¶ 28.

For its part, UC says that the Facebook Tracking Pixel is a component of its "website analytics practices," used to "drive patients to the UCLA Health website." NOR ¶ 34. UC says that the federal government, through the so-called "Meaningful Use" program, has "incentivized and directed providers who participate in the Medicare and Medicaid program (like UCLA Health) to offer patients online access to their [health] records, and to optimize patient engagement with their medical information." *Id.* ¶¶ 12, 17 (citing 42 C.F.R. §§ 495.2-495.370). As part of this program, the federal government gave incentive payments to healthcare providers who promoted patient engagement through the "meaningful use of certified [electronic health record] technology." 42 U.S.C. §§ 1395w-4(o), 1395ww(n); *see also* 42 C.F.R. §§ 495.20-495.24; NOR ¶ 18. The federal government provided guidance about how private providers could optimize their health portals, and offered a model for providers to follow that uses third-party marketers like Facebook to increase engagement. *See* NOR ¶ 20.[1]

## DISCUSSION

Section 1442 provides that a person "acting under" the direction of a federal officer may remove to federal court a civil or criminal action commenced against that person in state court. 28 U.S.C. § 1442(a)(1). Congress adopted this provision before the Civil War to ensure that attempts by southern states to challenge federal authority would be heard in federal court. *See Jalili-Farshchi v. Aldersly*, No. 3:21-cv-04727-JD, 2021 WL 6133168, at *3 (N.D. Cal. Dec. 29, 2021). As the plain language of Section 1442(a) indicates, it is intended to protect federal officers from interference with their official duties through state-court litigation. *See Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981). The statute "responds to three general concerns: (1) 'State-court

---

[1] UC's request for judicial notice of relevant guidance from the federal government, Dkt. No. 19, is granted.

proceedings may reflect "local prejudice" against unpopular federal laws or federal officials'; (2) 'States hostile to the Federal Government may impede' federal law; and (3) 'States may deprive federal officials of a federal forum in which to assert federal immunity defenses.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)). Section 1442 is liberally construed to address these issues, but is not limitless in scope. *See id.* (citing *Watson*, 551 U.S. at 147); *see also Geisse v. Bayer HealthCare Pharms. Inc.*, No. 17-cv-07026-JD, 2019 WL 1239854, at *4 (N.D. Cal. Mar. 18, 2019).

To remove under the section, UC must show "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (citation omitted); *see also Jalili-Farshchi*, 2021 WL 6133168, at *4.

The Ninth Circuit has identified several factors that are relevant to assessing whether a private person is acting pursuant to a federal officer's directions. These include whether the person: (1) "is acting on behalf of the officer in a manner akin to an agency relationship," (2) "is subject to the officer's close direction," (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm," and (4) is engaged in "activity [that] is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756-57 (9th Cir. 2022) (internal quotations and citations omitted). While federal regulations subject private persons to some degree of control, "'simply *complying*' with a law or regulation is not enough to 'bring a private person within the scope of the statute.'" *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (emphasis in original) (quoting *Watson*, 551 U.S. at 152); *see also Jalili-Farshchi*, 2021 WL 6133168, at *4.

Quinto does not dispute that UC is a person within the meaning of the statute or that UC has a colorable federal defense to her claims. *See* Dkt. Nos. 12, 20. The salient question is whether UC acted at the direction of a federal officer or agency.

3

On the record before the Court, UC has not shown that it acted under a federal officer or agency. UC says that it uses the Facebook Tracking Pixel as part of its broader effort to assist the federal government in achieving its "mission of a nationwide digitized healthcare system." Dkt. No. 18 at 11. That is not enough for removal on federal officer grounds. Contrary to UC's suggestion, *see id.* at 12, receiving incentive payments for acting in a way that promotes a broad federal interest -- in an area outside the traditional responsibility of the federal government -- is not the same as being contracted to carry out, or assist with, a basic governmental duty.

To illustrate why this is so, consider two recent Ninth Circuit cases. In one, a nursing home that complied with federal directives regarding the administration of infectious-disease testing could be said to help the government in its mission to curb a global pandemic. *See Saldana*, 27 F.4th at 684-85. In another, an oil company that extracted offshore oil resources pursuant to a lease executed with the government could be said to promote the federal government's interests in national security. *See City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1108 (9th Cir. 2022). In each case, the private entity's conduct was clearly related to a federal policy or program, but not a specific obligation or responsibility that would traditionally fall to the federal government, or that the government had otherwise assumed by statute. For this reason, the Ninth Circuit determined in each case that federal officer removal was improper, as the entity was not acting on the government's behalf or fulfilling a basic governmental duty. *See Saldana*, 27 F.4th at 685 ("Without more than government regulations and recommendations, [the nursing home] has failed to establish that it was 'acting under' a federal official, and it has not identified a duty of the federal government that it performed."); *Honolulu*, 39 F.4th at 1108 ("Congress endorsed oil operations and considered making a national oil company, but that does not show that oil production was a basic governmental task."). The same outcome is warranted here.

UC says it was subject to the close direction of a federal officer or agency by virtue of the "specific framework and guidelines" that the Meaningful Use program sets out for healthcare providers to follow. Dkt. No. 18 at 12; *see also* NOR ¶¶ 25-32. But merely being subject to a regulatory scheme is not the same as acting under a federal agency's close direction. *See Riggs v.*

4

*Airbus Helicopters, Inc.*, 939 F.3d 981, 985 (9th Cir. 2019) ("'[A]cting under' requirement is not satisfied by mere compliance with a regulation 'even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.'") (quoting *Watson*, 551 U.S. at 153); *see also Westbrook v. San Pablo Healthcare & Wellness Ctr.*, No. 21-cv-06474-JD, 2022 WL 2072933, at *2 (N.D. Cal. June 9, 2022).

UC is not similarly situated to the defendant in *Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014), where the Ninth Circuit "sustained the removal by a military contractor of a state court lawsuit alleging a failure to warn about asbestos hazards in naval equipment." *Jalili-Farshchi*, 2021 WL 6133168, at *4. The defendant in *Leite* "provided declarations by senior officers in the United States Navy stating that the Navy exercised complete control over the form and content of all warnings made by contractors, and that contractors could not include warnings unless specifically required and approved by the Navy." *Id.* (citing *Leite*, 749 F.3d at 1123). UC points to nothing resembling this level of direction and control.

UC's heavy reliance on two out-of-circuit district courts is misplaced. *See* Dkt. No. 18 at 1 (citing *Doe I v. UPMC*, No. 2:20-cv-00359, 2020 WL 4381675 (W.D. Pa. July 31, 2020); *Doe v. ProMedica Health Sys., Inc.*, No. 3:20-cv-01581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020)). These cases entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which "would permit removal to federal court in circumstances far beyond anything Congress intended." *Jalili-Farshchi*, 2021 WL 6133168, at *4. Consequently, the cases provide no basis for finding jurisdiction here.

**IT IS SO ORDERED.**

Dated: February 1, 2023

_____
JAMES DONATO
United States District Judge